JOHN GANSON and others, Respondents, v. THE CITY OF BUF-
FALO, Appellant.

When by law it is made the duty of a municipal corporation to pay to the own-
ers of lands appropriated for public purposes, the amount due for the same,
within one year after the same shall be ascertained on the report of commis-
sioners appointed for that purpose, an action will lie against such corporation
for such amount after the same becomes due and payable.

*It seems*, that if the fund out of which such amount to be paid, is to be raised
by an assessment to be made by the corporation for that purpose, and the
corporation neglect or refuse to make such assessment, that *mandamus* would
be the proper remedy.

Where by the charter, the sums awarded for damages are not declared to
be a debt against the city, or when it is not made the duty of the city to pay
the same, the *only* obligation resting upon the corporation is to put the neces-
sary machinery in motion according to the requirements of the statute.

THIS action is brought to recover the amount of an
award made by commissioners of assessments to the plain-
tiff's testator, for a piece of land taken and appropriated
by the defendants for the purposes of a ship-canal. The
action was tried in the Superior Court of Buffalo, by the
court without a jury, and which found the following facts :
That on the 20th of April, 1857, the common council of the
city of Buffalo adopted a resolution declaring its intention to
take and appropriate the land necessary to lay out a ship-
canal from Buffalo creek to Lake Erie, and for that purpose
to take certain lands described in said resolution. That for
that purpose certain proceedings were afterward had under
the charter of said city for the taking of such land. That
on the 31st day of July, 1857, the commissioners appointed
for that purpose made and filed with the city clerk of said
city their report, in and by which they awarded to the testa-
tor of the plaintiffs in this action for his interest in the land
described in the above-mentioned resolution, the sum of
$9,000, which report was confirmed by said common coun-
cil on the 7th day of December, 1857. That the proceedings
had to take the said land are all contained in the papers read
in evidence on the part of the plaintiffs, and with the excep-
tion of the order of the said Superior Court, made November

20, 1862, and the affidavit of Quartus Graves, made on the 24th day of July, 1862, are all attached together, and are now on file in the office of the city clerk as the record of such proceedings. That at the time of the taking of such proceedings the plaintiffs' testator was seized in fee of a part of the land described in said resolution of the common council, of April 20, 1857, and the said award to the plaintiff of $9,000 was made to him as a compensation for his interest in the said land. That the said common council has never made, or directed to be made, an assessment to pay the compensation in and by the said report awarded to the plaintiffs' testator and to the other persons mentioned therein, and that in fact no assessment has ever been made to pay such awards or compensation or either of them or any part thereof. That the proceedings so as aforesaid had for taking and appropriating the said land, to lay out said ship-canal, were not had upon the application of a majority of the property holders resident of the city of Buffalo and liable to be taxed or assessed for the construction of said canal, and that no petition or application whatever has ever been presented to said common council asking for or consenting to the construction of said ship-canal or the taking and appropriating of the land necessary to lay out the same. That since the confirmation of the said report the said defendant has done nothing toward the construction of the said ship-canal, and has never entered upon the lands mentioned and described in said resolution of April 20, 1857, or any part thereof, for the purpose of constructing said canal or for any purpose whatever.

Upon the foregoing facts, the said court found and decided as matter of law, that the plaintiffs' testator recover from the defendant the sum of $11,965.89. Judgment was thereupon given for that sum, and the same was affirmed at General Term, and the defendant appeals to this court.

DAVIES, J. It is insisted on the part of the defendant that the order amending the original order for the appointment of the commissioners was improperly admitted in evidence. The original order named *Joseph* G. Hoyt as one of

the commissioners. Under that order *James* G. Hoyt took the oath of office prescribed for the commissioners, and acted as such, and made and signed the report, which was confirmed. It is clear that he was the person intended, and who acted, and who was, in fact, the person appointed. There is no evidence in the case that there was any such person as Joseph G. Hoyt, and, it appearing to the court who made the order appointing the commissioners, that the writing of the word *Joseph* in the place of *James*, was a clerical error made by the clerk thereof, and that James G. Hoyt was the person actually appointed, it was competent for the court to amend the order in accordance with the facts. Such order had relation back to the original order, and made that conform to the truth of the matter. The court did not, therefore, err in admitting the order to amend the original order to be read in evidence, and, the original order being thus in fact amended, there was no error in the admission of the report of the commissioners, from which it appeared that the same was made by the persons named in the order of appointment as amended. The fact is found by the court, that the commissioners appointed by the court made and filed their report. If it was necessary to resort to the evidence, it is apparent from it that the facts proven abundantly sustain this finding without any aid from the order of amendment. As already observed, it was competent for the court to amend the proceedings to correct clerical errors. But if this amendment was not made, I am unable to see any reason why the report should have been excluded.

The first, second and third grounds of nonsuit urged in the part below were disposed of by this court, in the case of *Warren* v. *The City of Buffalo*, decided at the June Term, 1861. That was an action to recover an amount made and confirmed by these defendants for a piece of land taken under their charter for a public street. In the opinion in that case it was said that the compensation due to the owners was ascertained by the report of commissioners, and the report was duly confirmed. Nothing remained to be done,

except to make that compensation in money, and this the charter required the common council to make within one year after the amount was ascertained. No doubt that time was given for the purpose of enabling the city government to collect the money by local assessment on the persons or property benefited by the improvement; but the right to proceed and make this collection, or the neglect to exercise it, did not discharge the duty of paying the owners of the land, or extend the time for making such payment. The charter, in the seventeenth section of the eighth title, provides that the amount of compensation due to the landowners shall be legally assessed, but the eighteenth section declares, in effect, that, as between such owners and the city, the compensation shall be a general debt or charge. This is the effect, because the money is payable peremptorily within the time specified, and out of no particular fund.

The second ground of nonsuit urged was that the plaintiffs' remedy was by a mandamus to compel the common council of the defendant to proceed and make the contemplated assessment, and out of the fund thus received to pay and discharge the amount made to the testator. A like ground was taken in the case of *Warren* (*supra*), and it was then thus answered by this court: "It has been also said that the remedy of the plaintiffs is by mandamus, and not by suit. Undoubtedly if the sum in controversy was payable only out of the local assessment fund, a mandamus would lie to compel that assessment to be made, and an action probably would not lie until the money should be collected on the warrant. But the plaintiffs have nothing to do with the local tax. The duty owing to them is simply the payment of a sum of money, and the action of debt was always the appropriate remedy for the enforcement of such a duty."

It is urged by the respondents' counsel, that there is no proof in the record or otherwise, that one of the city assessors was appointed one of the commissioners, in accordance with the directions of the city charter, and again he urges that the provision of the charter requiring the appointment of one of the city assessors on the commission is unconstitutional. In

58

support of this latter position, he argues, that the Constitution provides that the compensation to be paid for land taken for public use shall be ascertained by a jury or by three commissioners appointed by a court of record. That it was intended to give parties the right to go before an unbiased court and submit their objections to any person proposed, and to secure the appointment of fair and disinterested appraisers. That the legislature has no right, therefore, to direct that any particular individual shall be appointed, and thus usurp the powers given to the court. In this view of the constitutional provision, the counsel for the respondents is undoubtedly correct. The legislature clearly had no power to say who, or what class of persons, should be appointed commissioners. In the matter of the opening of the Eleventh avenue, Judge EDWARDS, at Special Term, in 1852, held that this provision superseded the requirements of the act of 1839, which directed the court to appoint one commissioner on the nomination of the common council of New York, and one on the nomination of the parties, whose property was to be taken, and the third to be selected by the court; that the Constitution vested in the court, absolutely and without control, the appointment of the commissioners, and that the court had full power to select such commissioners as in its judgment were most fit, without reference to the nominations of the common council, or the parties in interest. Such had been the ruling of the court in other cases, and that is regarded as the settled practice in the appointment of commissioners in the first judicial district. (Davies' Laws, p. 1244.) It may be conceded, therefore, that the provision in the defendant's charter requiring the court to appoint one of the city assessors as one of the commissioners, is repugnant to the Constitution, and, therefore, void and of no obligatory force upon the court; yet still it is not perceived how this objection can be availed of, or is at all appropriate, if the position of the counsel is true, that there is no proof in the record or otherwise that one of the city assessors was appointed one of the commissioners. If the provision of the

charter requiring one of the assessors to be appointed was unconstitutional and void, surely the proceedings are not invalidated by the omission to prove that such illegal and void appointment was made. The averment in the complaint that one of the commissioners was a member of the board of assessors, was denied by the answer, and no proof was offered to sustain the averment, and there was no finding on the subject. But if the averment is to be taken as a fact, it is not perceived how it renders the appointment of this particular commissioner invalid. There is no prohibition in the Constitution against the appointment of one of the city assessors ; and, upon the argument of the defendant's counsel, sustained by abundant authority, it is manifest that the discretion of the court as to who it should appoint commissioners could only be restrained or qualified by a constitutional limitation. It follows, therefore, if the court in its discretion thought proper to appoint one of the city assessors a commissioner, it would have been perfectly legal and proper so to have done. By the charter of the defendant as it existed at the time this award was made and confirmed, it was made the duty of the defendant absolutely to pay the same within one year after the amount was ascertained. This ascertainment could only be definitely determined when the report of the commissioners should be confirmed. The amount, then, was to be paid within one year from the confirmation of the report. A similar provision exists in the laws relating to the taking of property for public use in the city of New York. There the functions of ascertaining the amount of compensation to be made to the respective owners of the lands taken, and the assessment of the total amount so ascertained, together with the costs and expenses of the proceedings, are united in one set of commissioners ; and they as well make the awards as make and impose the assessments. Upon the confirmation of their report the awards are ascertained and a fund provided for their payment. The statute also declares that the corporation of that city shall pay, within four calendar months after the confirmation of the report, the amount of such awards respect-

ively, and in case of neglect shall be liable in an action to pay the same, with lawful interest from the time of such demand, with costs of suit. It has never been questioned there that such liability was absolute upon the corporation at the expiration of the four months from the confirmation of the commissioners' report, and that it was no answer to the demand or to the action that the assessment made had not been collected.

The liability of these defendants, therefore, is clearly the same as that of the corporation of the city of New York, and is absolute, after the expiration of the time respectively specified for the payment of the awards. And this case is clearly distinguishable from the case of *McCullough* v. *The City of Brooklyn* (23 Wend., 458), and *Gerald* v. *Same*, decided in this court at June Term, 1863. Both these cases were actions to recover awards made for lands taken for public use, and the charter of the defendants required an assessment to be made for the payment of the awards. But the sums awarded for damages were not declared to be debts against the city, nor was it made the duty of the corporation to pay the money. It was held in those cases that the only duty or obligation resting upon that corporation was that of putting the necessary machinery in motion according to the requirements of the statute. It was said that if the common council had neglected that duty, or had been wanting in diligence, an action on the case might lie in favor of any one who, like the plaintiff, would be entitled to the money when collected. But it was suggested that a *mandamus* would be a more appropriate remedy. By an amendment made to the defendant's charter in 1859, the moneys payable by the defendant for awards of lands taken, instead of being payable within one year after the *ascertainment* of the amount thereof, were thereafter payable within one year after the assessments to be made for the payment thereof. The right of the plaintiffs' testator to this money and to compel its payment by the defendant was vested and complete at the expiration of a year from the ascertainment of the amount. The section of the defendant's charter was

not repealed, and therefore the reasoning of CARR, J., in *Butler* v. *Palmer* (1 Hill, 324), is inapplicable in this instance.  It may well be held that the amendment of 1859 applied only to awards made after the passage of that act.  It did not in terms apply to those made and ascertained previous to its passage, and therefore should not have that effect.  An act of the legislature, as a general rule, is to have no retrospective operation, and BLACKSTONE, in his commentaries, treats it as a just principle that all laws are to commence *in futuro* and operate prospectively.  (1 Bl. Com., 44.)

In *Dart* v. *Van Vleck* (7 Johns., 477), it was held, after much deliberation and an extended discussion, that an act of the legislature is not to be construed to operate *retrospectively*, so as to take away a vested right, and that it was a principle of universal jurisprudence, that laws, civil or criminal, must be prospective, and cannot have a retroactive effect.  The language of Judge THOMPSON in that case is pertinent to that now under consideration.  He said giving to the act a retrospective operation would be productive of wrong and injustice, for it not only takes away a vested right but punishes and endamages the plaintiff in the payment of costs.  It can never be presumed from the general words of that statute, that the legislature intended that it should work such injustice.  Nothing short of the most direct and unequivocal expression would justify such a conclusion.  The best settled rule of construction given by the English courts to the statute of frauds (29 Car. II, ch. 3) goes strongly in corroboration of the interpretation I have given to the act before us.  The language of that statute is, "that from and after the 24th of June, 1677, *no action should be brought* whereby to charge any person upon an agreement in consideration, etc."  Yet it has been uniformly held that the act would not retrospect so as to take away a right of action to which a party was before that time entitled, but applied only to promises made after the 24th of June, 1677.  (4 Burr., 2560 ; 2 Shower, 17 ; 2 Mod., 310 ; 1 Vent., 330.)  It must, therefore, be held that the amendment of 1859 did not take away the

right of action of the plaintiffs'· testator which was vested and complete before that amendment was made.

It is further contended, that the whole proceedings of the common council of the defendant were void for want of authority, in this, that there was no application of a majority of the property holders, resident of the city of Buffalo, and liable to be taxed or assessed for the proposed ship-canal, to the common council, for the construction thereof, or the taking and appropriating of the land necessary to lay out the same, and that without such application the common council had no power or authority to take the said land or proceed in the construction of the said canal. The provisions of the nineteenth section of the defendant's charter, requiring an application of a majority of the property holders, apply only to the improvements mentioned and enumerated in that section. They are, the grading, building, paving, repairing, macadamizing or graveling any street, alley, lane or highway in said city, or the construction, relaying or repairing, any cross and sidewalks, drains, basins, canals, docks, slips, wharves, sewers and aqueducts therein. It is thus seen that these provisions contain no limitation upon the powers of the common council to take and appropriate the necessary land, which may be required for the laying out, widening, altering or straightening any street, alley, lane, highway, market ground, public ground, canal, basin, wharf or slip; conferred by the sixth section of title eight. The two proceedings are entirely independent of and unconnected with each other, and that authorized by the sixth section can be initiated on the mere motion of the common council, while these improvements called for by the nineteenth section must have for their basis an application from a majority of the property holders directly interested therein and resident of the city. There is no force, therefore, in the objection, that the resolution to take the lands of the testator of the plaintiffs and others for the construction of the ship-canal, was void, because not asked for by a majority of property holders interested therein. It may well be that the common council could not proceed to construct said ship-canal without such application,

but I have no doubt such application was not called for, or required, before they could determine to take the land necessary for that purpose.

The judgment should therefore be affirmed.

All concurring,

Judgment affirmed.