# SUPREME COURT.

### No. 2.

THE PEOPLE OF THE STATE OF NEW YORK agt. WILLIAM M.
TWEED and another.

*The written names of the struck jury chosen by the elisors cannot be changed
or altered after the list is completed.*

The statute provides that the elisors shall select forty-eight names
from the original list of jurors returned to the clerk.    From this list
each party may strike off alternately, twelve names; leaving twenty-
four jurors, from which the regular panel of twelve is to· be drawn for
the trial of the cause.

If the elisors, in selecting the forty-eight names, make a mistake as to the
christian name of one of them, and the mistake is not discovered until
the list is completed, and it turns out that the name selected and entered
by the elisors represents a competent juror by that name, the sheriff has
no authority to summon the person intended to be chosen by the elisors,
nor has the court any authority to substitute the person intended for
the one actually drawn.    The mistake presents good ground for chal-
lenge to the array.

*New York Circuit, January* 12, 1876.

A DECISION having been rendered upon the challenge to the
array of the struck jury in this cause, made by the counsel for
the defendant, Tweed, which holds that such challenge must
be sustained upon the ground, mainly, that the list of jurors
summoned by the sheriff contains only twenty-three who
have been selected and approved by the elisors, and one who
was not so selected or approved; a motion is now made to·
correct the list of names by erasing therefrom the name of
George W. Southwick, the juror not selected, and putting in

its stead the name of John C. Southwick, the individual who was chosen.

*Wheeler H. Peckham & James C. Carter*, for plaintiffs.

*David Dudley Field, and others*, for Mr. Tweed.

WESTBROOK, *J.* — As the name George W. Southwick was upon the original list of forty-eight names, the objection to the application now made, which at once strikes the mind, is, that if it be granted, the defendant has been deprived of his opportunity to strike the name of the juror, who is, by the amendment, made one of the twenty-four persons from whom the jury must be taken, from the original list of forty-eight from which, by the striking off by each party of twelve names, as allowed by statute, the twenty-four have been selected.    It will at once be seen that this involves a substantial right of the defendant.    John C. Southwick and George W. Southwick being as distinct individuals, both having an actual existence, as Messrs. Field and Peckham, the defendant might have great objections to the former (John C.) and none to the latter (George W.).    If the name of the former had appeared upon the original list of forty-eight names, his might have been the first one stricken therefrom by the defendant under his absolute right to object to twelve out of such forty-eight.

The argument, however, which the counsel for the plaintiffs make in favor of the motion is quite plausible, and worthy of careful attention.    It concedes to the defendant the right of selection of twelve persons who shall be stricken from the forty-eight chosen; the necessity of his knowing the individuals who are selected to compose the forty-eight, in order to intelligently exercise his choice of excluding twelve; but it claims that such choice was exercised, as to the individual whom the name of John C. Southwick actually represents.    To prove this, certain affidavits are presented,

and the evidence of the elisors given upon the trial of the challenge is referred to for the purpose of showing that the counsel for the defendant knew who the Mr. Southwick was who was erroneously represented as being George W., and not truly stated by the name of John C. It is said that he was orally described as the partner of Jackson S. Schultz, and a leather merchant in " the swamp," and that that was better information as to the individuality of the juror than the christian name.

It is very obvious, however, that this line of evidence and argument must always be unsatisfactory and unsafe. If actual conversation with the counsel was shown to have taken place, and from their words it would clearly appear that they knew who the man was in regard to whom they were to exercise their judgment of approval or disapproval, we might proceed and be sure that the individual selected was known, though he was given a wrong name. But no such conversation is shown to have taken place, and I am asked to say that I can surely, with correctness, draw the conclusion that they knew the individual selected, because certain things were spoken in their hearing which would indicate that the written name was not the choice of the elisors. The uncertainty of such a conclusion being right is most manifest. The stenographer, Mr. Underhill, who undertook to take notes of all that was said, testified that, owing to the confusion in the room, he could not say he had recorded all. If he did not hear every word, can I be sure counsel did? And can I be so sure, in view of the positive affidavits submitted by defendant's counsel, that they did not understand the Mr. Southwick selected was the partner of Mr. Schultz? But suppose the remark as to the juror, that he was the business partner of Mr. Schultz, was heard, on again looking at the name and a consultation of a directory they conclude that the elisor is mistaken as to the man, and that he is not the partner of Mr. Schultz, but on the contrary a very different individual, when the written information is one way and

the verbal the other, what is the party to do? Can he do otherwise than rest upon the written evidence before him? And if he does, and the court now holds that he erred, and should have taken the uttered descriptive words rather than the writing, has not the party been misled to his prejudice by the contradictory statements of the court's own officers? Or suppose again, that the elisors did distinctly say, and were distinctly understood as saying, that the Mr. Southwick upon their list was the business partner of Mr. Schultz, and a leather merchant in "the swamp," such information is not necessarily inconsistent with his being George W. Southwick. Knowing, or being informed as to the individual whom the name represented, counsel might say: We will accept that man whom the name indicates, though he is Mr. Schultz's partner. They are not told by any words which negative the expression of the choice, as indicated by the list before them, that Mr. George W. Southwick is not the man chosen, but are simply told of his business connection and occupation. The written name and the spoken words do not necessarily conflict, and I cannot say that, in exercising the choice of exclusion, the counsel for defendant acted upon the knowledge that George W. Southwick was in fact John C. Southwick.

A careful reading of the statutes (2 *Edmonds' Statutes*, 435), however, will show that no resort can be had to extrinsic evidence to prove what persons are selected. There must, of course, be the mental operation of the elisors in the selection, and the indication to the parties of the result of such mental operation, and the mode of such indication is the written name. By the forty-eighth section, from the original jury list returned to the clerk, the elisors were to choose "the names of forty-eight persons whom they shall deem most indifferent between the parties and the best qualified to try such cause." By subdivision 2 of same section, it is further declared that the party applying for the struck jury "shall then first strike out one of said names, and the

opposite party or his agent shall strike out another of such names; so alternately, until each party shall have stricken out twelve names." The third subdivision of the section provides that, if either party fails to appear, " or shall neglect to strike out any names according to the foregoing provisions," the clerk shall strike for such party. The fourth subdivision of same section provides for making a list of " the names of the twenty-four persons not stricken out," and a certificate that they compose the persons drawn to serve as jurors, and the delivery thereof to the sheriff. The forty-ninth section provides: " The sheriff shall summon the persons whose names are contained in the list so delivered to him by the clerk, in the same manner as other jurors are required to be summoned, and shall return the names of those summoned to the court at which they are required to appear as jurors."

To my mind the language of the statute is conclusive, the evidence of the choice of the elisors is the written name, and the thought is expressed in every section. It is really the only practical mode of doing so. Hold that the written name may be explained away, and what safety has a party? In this particular instance, from the character of the elisors, we entertain no doubt as to the absolute truth of their statement, but the precedent, if made, will be a most dangerous one for the future.

The case of *Ganson* agt. *The City of Buffalo* (1 *Keyes*, 454), is not the one with which we have to deal. Commissioners had been appointed to appraise lands required for city use. " The original order named Joseph G. Hoyt as one of the commissioners. Under that order James G. Hoyt took the oath of office prescribed for the commissioners, and acted as such, and made and signed the report, which was confirmed. It is clear that he was the person intended, and who acted, and who was, in fact, the person appointed. There is no evidence in the case that there was any such person as Joseph G. Hoyt, and it appearing to the court, who made the order

appointing the commissioners, that the writing of the word Joseph in the place of James was a clerical error made by the clerk thereof, and that James G. Hoyt was the person actually appointed, it was competent for the court to amend the order in accordance with the facts." I have given the language of judge DAVIES in that case to show the ground on which it was put, and its inapplicability here. If there was no such person as George W. Southwick, and John C. Southwick had been accepted by all as being the former, and had acted and served without objection under the name of George W., there would be no difficulty. There being no objection at the proper time, it would be waived. But we have a George W. Southwick as well as a John C. Southwick, and I am asked to say upon evidence, that the elisors intended the latter, and not the former, and that such intention was known to the counsel of the defendant, when they exercised their choice of selection as to names being stricken out; and to find that they did so understand it, when on oath they aver to the contrary. I have already alluded to the danger of so finding upon the evidence before me, but the difficulty is greater than that. The statute makes the evidence of the choice, and the indication thereof to the parties, the written name. That is the record evidence, and were declarations altering or qualifying it allowed, there would be endless confusion and trouble as well as great danger of fraud and mistake.

Neither can the offer of counsel for plaintiffs to peremptorily challenge John C. Southwick, if defendant's counsel so desire, help the motion. The effect of that would be to abridge the panel by one name, when the statute contemplates twenty-four from which to choose the twelve. The effect of granting the motion to amend because of the tendered stipulation to challenge John C. Southwick, is equivalent to compelling the defendant to accept twenty-three names instead of the statute number of twenty-four, from which the jury to try the cause is to be chosen. The statement of the proposition is the best answer to be made.

People agt. Tweed.

In denying this application of the counsel of the plaintiffs, no possible imputation is made upon their skill, learning and care. They are in no wise responsible for the error. They had a right to assume that the elisors had selected every name from the general jury list as they were ordered to do; and they certainly could not know that the elisors meant, in the case of one individual, some other person than the one who was indicated by the name which they themselves wrote.